*PEARSON ET AL. V. STEPHENS.

CONSTITUTIONALITY OF THE MIAMI COUNTY FEE BILL.

> The act, passed April 21, 1896, (92 Ohio Laws, 567), entitled: "An act relating to the duties and compensation of certain county officers and their assistants in Miami county," is an act of a general nature, limited in its operation to Miami county, and is therefore void under Art. 2, section 26, which requires all laws of a general nature to have a uniform operation throughout the state.

ERROR to the Court of Common Pleas of Miami county.

SUMMERS, J.

The act referred to in the syllabus provides that the compensation of the auditor, treasurer, probate judge, sheriff, clerk of the court of common pleas, recorder, prosecuting attorney, infirmary directors and coroner of Miami county, and of their assistants, shall be by annual salary. It provides for the collection of such fees, etc., as are now or may hereafter be allowed by law for the performance of official duty by any of the officers mentioned, and the payment of them to the county treasurer, and the keeping of accurate accounts thereof in books to be provided for that purpose. It provides that if any of the officers mentioned wilfully fails to perform any duty required of him by the act, or knowingly violates any provision thereof, he shall be fined not exceeding five thousand dollars, or be imprisoned in the penitentiary not less than one year nor more than five years, or both.

The defendant in error, a taxpayer of the county, commenced this action in the court of common pleas to enjoin the auditor and county commissioners from expending any of the funds of the county in the purchase of the books required to be kept by the act, on the ground that the act is unconstitutional.

The law is claimed to be unconstitutional, because:

1. It is a law of a general nature, and does not have a uniform operation throughout the state.

2. It provides compensation for said officers different from that provided for similar officers in the other counties of the state.

3. It imposes duties upon said officers not imposed upon similar officers in the other counties of the state.

4. It creates a new crime, punishable by fine and imprisonment, which applies only to the officers of Miami county.

The defendants filed a general demurrer, which was overruled, and not desiring to plead further, judgment was rendered against them, and they prosecute error to this court.

The question for determination is the constitutionality of this act.

Art. 2, section 26, provides, that, "All laws of a general nature shall have a uniform operation throughout the state."

The operation of the act is limited by its terms to Miami county, and its validity, therefore, depends upon whether it is a local law, or a law of a general nature. Counsel for plaintiffs in error claim that the supreme court has determined that a law relating to the compensation

---

*This decision was reversed in 56 O. S., 126, the Supreme Court holding that the act, 92 O. L., 567, in limiting compensation of certain officers in Miami county, is local in its nature and, therefore, not unconstitutional; also, that the system of compensation may be separated from other portions of the act and is not affected by their constitutionality.

of the county officers of a particular county, is of a local, and not of a general nature.

A law similar to this was upheld in *State* v. *The Judges*, 21 Ohio St. 1, and the decision in that case is decisive of this, so far as this court is concerned, unless the act under consideration there is distinguishable from the one involved here, or subsequent decisions of that court require a different holding. Of the act under consideration in that case, White, J., says, (page 10,) " The act was intended to provide for a condition of things in its nature local to Hamilton county."

The compensation of the county officers in the eighty-eight counties of this state was provided for by general laws, applying to all the counties, until 1870, and still is, excepting as to several attempted to be withdrawn under classification.

No reason is apparent from the provisions of this act, or assigned in the argument of counsel, for making an exception of Miami county. So that if whether a law is of a general nature is to be determined, not by general rule, but by the consideration of each case as it arises, as is said by McIlvaine, J., in the *State* v. *Powers*, 38 Ohio St. 54, 63, where this question was involved, it may well be claimed that *State* v. *The Judges*, supra, is not decisive of this case.

The proper construction of section 26, article 2, has been the subject of so frequent and such able discussion by our supreme court that any attempt to do more than try to make proper application of the reasoning of the judges of that court would be presumptious.

In *Kelley* v. *The State*, 6 Ohio St. 271, an act conferring special jurisdiction on the court of common pleas *in certain counties* was held to be in conflict with this section, and Scott, J., says, (page 272) :

" The constitution contains in general terms the express and significant provision that ' all laws of a general nature shall have a uniform operation throughout the state.' Const., art. 2, sec. 26.

" The fourth article provides, in the 3rd section, that, ' courts of common pleas shall be held in every county ;' and in the 4th section, that ' The jurisdiction of the courts of common pleas and of the judges thereof shall be fixed by law.'

" Section 7 prescribes the extent of the jurisdiction of the probate court in the following language : ' The probate court shall have jurisdiction in probate and testamentary matters,' etc., etc., ' and such other jurisdiction in any county or counties as may be provided by law.'

" We have, then, in the constitution, first, a general, unqualified, and positive prohibition or limitation of legislative power, forbidding the giving of a partial operation to any law of a general nature—or in its own affirmative terms requiring that a uniform operation throughout the state shall be given to all laws of a general nature. Without undertaking to discriminate nicely or define with precision, it may be said that the character of a law, as general or local, depends on the character of its subject-matter. If that be of a general nature, existing throughout the state in every county, a subject-matter in which all the citizens have a common interest—if it be a court organized under the constitution and law within and for every county of the state, and possessing a legitimate jurisdiction over every citizen, then the laws which relate to and regulate it are laws of a general nature, and by virtue of the prohibition referred to, must have a uniform operation throughout the state. But the courts of common pleas in Ohio are an organization of a general court, and the organic law of the state provides for their existence in

every county; they are an important agency in the administration of justice throughout the state, and are by law clothed with a jurisdiction over every citizen. The laws then which relate to and regulate their organization and jurisdiction are laws of a general nature, and are imperatively required to have a uniform operation throughout the state. They cannot be withdrawn from the operation of the plain constitutional prohibition unless by an exception contained in the same instrument. And that exemption, to be effectual, should be as explicit as the prohibition itself.

"It must be found in express terms, or, at least, arise by implication fair and necessary. But it is not claimed that the constitution contains any provision which in *express terms* excepts laws prescribing the jurisdiction of the courts of common pleas from the requirement of a uniform operation.

"As to the extent of this jurisdiction, its only provision is 'the jurisdiction of the courts of common pleas and of the judges thereof shall be fixed by law.' Certainly there is no exemption from the rule in this language; on the contrary, the jurisdiction is spoken of as *one* and therefore uniform as to be 'fixed,' and therefore not varying with every county line. But it is enough to say that the language does not, even remotely, imply any exception from the general rule."

The rule here laid down does not appear difficult of application. The difficulty is, in the absence of any rule, to distinguish the character of the subject-matter of the particular law under consideration from the character of the subject-matter of some law held, under stress of local conditions, not to be of a general nature.

In *McGill* v. *The State*, 34 Ohio St., 228, the discussion of this subject is especially full and able, and the dissenting opinion of Okey, J., seems to be supported by the better reason.

In that case Boynton, J., says, this section is taken from the constitution of California, and that California borrowed it from the bill of rights of the constitution of Iowa, and then, after quoting from several decisions of the supreme court of California, says, (240.)

"This holding (of the California supreme court) was founded on the reasoning, that the provision of the constitution of that state, having been taken from the constitution of Iowa, and the term being clearly defined by the latter clause of the Iowa section, the convention that borrowed it must be presumed to have borrowed its meaning, and designed that it should establish the same rule of legislative action, which, by express definition, it is made to establish in the constitution from which it was taken."

The rule of construction on which this holding is based does not apply in the construction of constitutions. In such case the question is not, what did the convention which framed the constitution intend, but what did the people who adopted the constitution understand or intend the provision to mean, and there is no presumption that they either knew or intended to adopt the meaning given it elsewhere.

Endlich on the Interpretation of Statutes, sec. 530, note. Thurman, J., in *Exchange Bank of Columbus* v. *Hines*, 3 Ohio St., 1, 46, 47; Cooley's Const. Lim. (6th Ed.), page 80.

Art. 1, sec. 2. Declaration of Rights, of the constitution of California, 1849, is as follows: "All laws of a general nature shall have a uniform operation."

Art. 1, sec. 6. Bill of Rights of the constitution of Iowa, 1846, is as follows:

" All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

Art. 3, sec. 30. Legislative department of the constitution of Iowa, 1846, is as follows :

" The general assembly shall not pass local or special laws in the following cases:

" In all cases above enumerated, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state."

That the latter clause of sec. 6, art. 1, of the Iowa Bill of Rights defines the preceding clause, " All laws of a general nature shall have a uniform operation," is doubtful. This latter clause of sec. 6, art. 1, of the Iowa Bill of Rights is sec. 23, art. 1, of the Indiana Bill of Rights, of the constitution of 1851, and the preceding clause is not in the Indiana Bill of Rights. And if the latter clause of sec. 6, art. 1, of the Iowa Bill of Rights does not define the preceding clause, it is still more doubtful that the adoption by California of the preceding clause carried with it the latter clause also. But be this as it may, there can be little doubt that the construction given to sec. 2 of the Declaration of Rights of California, cannot be applied to sec. 26, art. 2, of our constitution.

The California cases, discussed by Boynton, J., in *McGill* v. *The State,* 34 Ohio St., 228, 241-242, are to the effect that uniform operation means an operation which is equal in its effect upon all persons or things upon which the law is designed to operate at all; and that " the *nature* of a given statute, as being general or special, must depend, in a measure, upon the legislative purpose discernable in its enactment." The provision of our constitution is : " All laws of a general nature shall have a uniform operation *throughout the state.*" The character of the subject-matter, not the legislature, determines what operation the law must have; if that is of a general nature, the law must have a uniform operation throughout the state and it is not sufficient that it has "an operation which is equal in its effect upon all persons or things upon which the law is designed to operate at all," if it is designed to operate upon persons or things in only part of the state.

That the provision of the California constitution as construed by its supreme court was not comprehensive enough to subserve the purpose of its adoption is evidenced, perhaps, by the fact that its constitution of 1879 contains the following provisions relating to the matter:

"Art. 4, sec. 25, The legislature shall not pass local or special laws in any of the following cases enumerated, that is to say:

"First -Regulating the jurisdiction and duties of justices of the peace, police judges, and of constables.

"Second—For the punishment of crimes and misdemeanors.

"Third · Regulating the practice of courts of justice.

"Fourth—Providing for changing the venue in civil and criminal actions.

"Fifth—Granting divorces.

"Sixth—Changing the names of persons or places.

"Seventh—Authorizing the laying out, opening, altering, maintaining, or vacating roads, highways, streets, alleys, town plots, parks, cemeteries, graveyards, or public grounds not owned by the state.

"Eighth—Summoning and impaneling grand and petit juries, and providing for their compensation.

"Ninth—Regulating county and township business, or the election of county and township officers.

"Tenth—For the assessment or collection of taxes.

"Eleventh—Providing for conducting elections, or designating the places of voting, except on the organization of new counties.

"Twelfth—Affecting estates of deceased persons, minors or other persons under legal disabilities.

"Thirteenth—Extending the time for the collection of taxes.

"Fourteenth—Giving effect to invalid deeds, wills or other instruments.

"Fifteenth—Refunding money paid into the state treasury.

"Sixteenth—Releasing or extinguishing, in whole or in part, the indebtedness, liability, or obligation of any corporation or person to this state or to any municipal corporation therein.

"Seventeenth—Declaring any person of age, or authorizing any minor to sell, lease, or encumber his or her property.

"Eighteenth—Legalizing, except as against the state, unauthorized or invalid acts of any officer.

"Nineteenth—Granting to any corporation, association, or individual, any special or exclusive right, privilege or immunity.

"Twentieth—Exempting property from taxation.

"Twenty-first—Changing county seat.

"Twenty-second—Restoring to citizenship persons convicted of infamous crimes.

"Twenty-third—Regulating the rate of interest on money.

"Twenty-fourth—Authorizing the creation, extension, or impairing of liens.

"Twenty-fifth—Chartering or licensing ferries, bridge or roads.

"Twenty-sixth—Remitting fines, penalties, or forfeitures.

"Twenty-seventh—Providing for the management of common schools.

"Twenty-eighth—*Creating offices or prescribing the powers and duties of officers in counties, cities, cities and counties, township, election or school districts.*

"Twenty-ninth—*Affecting the fees or salary of any officer.*

"Thirtieth—Changing the law of descent or succession.

"Thirty-first—Authorizing the adoption or legitimation of children.

"Thirty-second—For limitation of civil or criminal actions.

"Thirty-third—*In all other cases where a general law can be made applicable.*

Attention is directed to the twenty-eighth, twenty-ninth and thirty-third items.

The constitutions of all the western and southern states, as well as some of the eastern states, contain lists of similar restrictions, and Mr. Bryce well says, (The American Commonwealth, 470,) " the fullness and the minuteness of these categories of restrictions show that the mischiefs arising from improvident or corrupt special legislation must have become alarming."

And section 53 of article 3, of the Missouri constitution of 1875, not only inhibits local or special laws in a very long list of cases, and directs that in all other cases where a general law can be made applicable no local or special law shall be enacted, but also provides: "And whether a general law could have been made applicable in any case, is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject."

Section 26 of article 2, of our constitution was intended to prevent the mischiefs arising from special legislation; and while the subject-matter of some of the restrictions comprised in these lists is not of a general nature, an unrestricted construction of our provision would reach the same end. This provision of our constitution is found in the article which relates to the legislative power, and not in the Bill of Rights, as are the Iowa and California provisions. It is in the article relating to the legislative power that these restrictions are found in the constitutions of the states previously indicated.

In *State* v. *Bargus*, 53 Ohio St., 94, 107, Shauck, J., says:

"In volume eighteen, Laws of Ohio, published in 1820, the acts of the general assembly were published under the titles of 'Acts of a General Nature' and 'Acts of a Local Nature,' and these titles were used consistently during the thirty years following that date and preceding the adoption of the present constitution. It can hardly be doubted that in this manner these terms became familiar to the people, and their meanings were determined by such familiar usage. The laws published as 'Acts of a General Nature' were not always of uniform operation throughout the state, for that was not required by any provision of the constitution then in force. In the adoption of section 26, article 2, of the present constitution, the phrase 'Laws of a General Nature' was employed in the sense then familiar to designate the acts, which, as experience had demonstrated, should have a uniform operation throughout the state."

This being true, it was apparently not only unnecessary to particularize, but much better to adopt the general restriction that legislation with respect to general subjects must be by general laws having a uniform operation throughout the state.

The constitution of 1802 contained no such provision. This provision is a restriction upon the legislative power, and having been incorporated in the present constitution to prevent abuses arising under the former, should receive a broad and not a narrow construction.

The constitution did not create the counties, but recognized them as existing subdivisions of the state. Section 1, article 10, is as follows: "The general assembly shall provide, by law, for the election of such county and township officers as may be necessary." And section 20 of article 2, provides: "The general assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers."

Section 8, article 4. After specifying the jurisdiction of the probate court adds—"and such other jurisdiction, in any county or counties as may be provided by law." Ranney, J., in *Giesy* v. *C., W. & Z. R. R. Co.*, 4 Ohio St., 308, 321, says: "The words 'in any county or counties,' were probably used rather as enabling than restrictive language, and were designed to permit the general assembly notwithstanding the provisions of section 26 of article 2, requiring 'all laws of a general nature to have a uniform operation throughout the state'—in its

discretion, to confer upon the probate court more extended powers in some counties than in others." This was approved in *Railroad Co.* v. *O'Harra*, 48 Ohio St., 343, 354. Section 1, article 10, contains no such enabling words, and the reasoning upon which it was held, in *Kelley* v. *The State*, 6 Ohio St., 269, that a law relating to the jurisdiction of the court of common pleas was one of a general nature, leads to the same conclusion as to a law creating county offices, and if the law creating the offices must be general and of uniform operation throughout the state, then a law prescribing the duties or fixing the compensation of the incumbents is one of a general nature, because such is the character of its subject-matter, not inherently so, but made so by the constitutional provision, section 1, article 10.

The constitution of 1851, article 4, section 16, provides for the election of a clerk in each county. That the legislature regarded the subject-matter as one of a general nature is evidenced by the fact that from the beginning down to 1870 all laws creating such offices, prescribing the duties and fixing the compensation of the officers, have been general and of uniform operation throughout the state.

Of those fixing fees or compensation the following are referred to: Chase's Statutes, page 1770; Curwen, volume 1, page 457; Swan's Statutes, page 387; Swan & Sayler, 370. And until the passage of this Miami county law, there is nothing to indicate a change of this legislative view.

Such laws as those considered in *State* v. *The Judges*, 21 Ohio St., 1, (Hamilton county fee bill), *McGill* v. *State*, 34 Ohio St., 228, (Cuyahoga county jury law), *Hart* v. *Murray*, 48 Ohio St., 605, (Cuyahoga county justice of the peace act), *State* v. *Brennan*, 49 Ohio St., 33, (Hamilton county stationery keeper), do not indicate any change of view, but only serve to show more emphatically than the former laws that such was the legislative view, for, while each was designed to meet a local want, each was attempted to be by classification disguised in the form of a general law.

Whether or not any of these laws could have been upheld by reason of the classification or attempted classification of the counties it is not necessary to consider.

The argument in *State* v. *The Judges*, 21 Ohio St., 1, grounded upon the supposed results of requiring a law relating to the compensation of county officers to have a uniform operation, could have been urged with more force in *Hixon* v. *Burson*, 54 Ohio St., 243, and *Grove* v. *Leidy*, 6 C. D., 116; for in some parts of the state materials for the construction of improved or macadamized roads are abundant, while in other parts they are wholly absent, and the population or necessity may be such as to make practicable at one place what would be folly at another. Moreover it is not necessary that the legislature should fix the fees or salary, or graduate them by population. In *Cricket et al.* v. *The State* 18 Ohio St., 9, 21, section 20, article 2, was under consideration, and it was held:

" The duty enjoined by this section in regard to fixing the compensation of officers does not require the general assembly to fix the sum or amount which each officer is to receive, but only requires that it shall prescribe or '*fix*' the *rule* by which such compensation is to be determined."

If the law is one of general nature, then as is well said by Scott, J., in *Kelley* v. *The State*, 6 Ohio St., 270, 272 :

" It cannot be withdrawn from the operation of the plain constitutional prohibition, unless by an exemption contained in the same instrument. And that exemption, to be effectual should be as explicit as the prohibition itself."

In *Hixson* v. *Burson*, 54 Ohio St., 243, section 26, article 2, was again under consideration, and Burket, J., in a very able opinion, reconsiders the whole matter. The rule laid down in *Kelley* v. *The State*, 6 Ohio St., 270, is approved and in the opinion are these significant words:

" This conclusion has been reached after mature deliberation, and we might say with regret, as it involves the overruling of the second syllabus of the case of *State ex rel. Hibbs* v. *The Commissioners of Franklin county*, 35 Ohio St., 458. With the highest regard for the eminent jurist who wrote the opinion in that case, and the able judges who then composed the court, we tried to reconcile that case with the provisions of the constitution, but were unable to do so, and we therefore reluctantly overruled the second syllabus."

In this matter *stare decisis* finds little, if any, room; while to sustain this law is not merely to open the door to, but to invite, and will be followed by, the enactment of a horde of so-called local laws creating different county offices in each of the eighty-eight counties of the state and prescribing different duties for the same office, as well as fixing different salaries for the performance of similar duties. To uphold this law is to confess that the constitution has not invested the courts with power to prevent legislation relating to the counties of a character which it is admitted is the bane of our cities.

Until the present time the general assembly has been able to prescribe the fees of county officers by general laws, excepting in the cases already noticed where local conditions were supposed to call for special legislation. No reason is apparent for the exception attempted to be made by this statute, and if it is no longer practicable to fix the compensation of county officers by general laws, it still is practicable by general laws to prescribe the rule.

The judgment will, therefore, be affirmed.

*J. A. McMahon* and *Long & Kyle*, for Plaintiffs in Error.

*A. F. Broomhall,* for Defendant in Error.

The judgment in this case was reversed by the Supreme Court March 9, 1897. 56 O S., 126.